CHEF'S CHOICE PRODUCE, LTD., THOMAS W. BURKE, JR., A PARTNER OTHER THAN THE TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5749-88.    Filed October 3, 1990.

*Charles W. Hall, Steven C. Salch,* and *Stephen P. Howard,* for the petitioner.

*Marilyn S. Ames,* for the respondent.

## OPINION

SCOTT, *Judge:* This case is before the Court on petitioner's motions to dismiss for lack of jurisdiction and, in the alternative, for summary judgment. Both motions are based on petitioner's position that sale of the major asset of the partnership, Chef's Choice Produce, Ltd. (Chef's Choice), in a bankruptcy proceeding terminated the existence of the partnership for all purposes, including respondent's authority to select a tax matters partner and issue a notice of final administrative adjustment of partnership items and the authority in any person to institute a suit with respect to those adjustments.

Respondent determined adjustments to the 1982 and 1983 partnership returns of Chef's Choice as set forth in his notice of final partnership administrative adjustment. The facts relevant to petitioner's motions have been stipulated and are found accordingly.

Chef's Choice was a limited partnership organized in 1982 under the laws of the State of California for the purpose of conducting a tomato-growing operation in solar heated greenhouses. Petitioner, Thomas W. Burke, Jr. (Mr. Burke), was a limited partner in Chef's Choice and was admitted to the partnership on November 15, 1982. Chef's Choice's principal place of business was in Houston, Texas.

On December 30, 1982, Chef's Choice contracted to acquire an improved tract of real property located in San Luis Obispo, California, from Bent Tree Ranch, Inc. (Bent Tree), a general partner of Chef's Choice. At the time Chef's Choice entered into this contract, the property was encumbered by various mortgages including a purchase money mortgage held by the party from whom Bent Tree had previously acquired the property (hereinafter referred to as

the mortgage holder). Chef's Choice conducted its activities on this tract of real property. The real property and improvements thereon constituted substantially all of Chef's Choice's assets.

Chef's Choice filed Forms 1065, U.S. Partnership Returns of Income, for the taxable years 1982 and 1983 on April 18, 1983, and April 15, 1984, respectively. The address shown on these returns was 4550 Post Oak Place, No. 111, Houston, Texas 77027. Respondent mailed a "Notice of Beginning of an Administrative Proceeding" for the partnership's 1982 and 1983 taxable years to the partnership's tax matters partner (the prior tax matters partner) and notice partners on November 29, 1984.

In 1985, Bent Tree defaulted on the purchase money mortgage on the San Luis Obispo real property and the mortgage holder posted notices of foreclosure on the property. To protect its rights in the real property, Chef's Choice filed a petition for bankruptcy under the provisions of Chapter 11 of the United States Bankruptcy Code (the Bankruptcy Code) in the United States Bankruptcy Court (the bankruptcy court) for the Central District of California on August 19, 1985. In November 1985, the mortgage holder sought relief from the automatic stay of the Bankruptcy Code to foreclose on the real property. Such relief was granted on February 19, 1986, and the real property was sold at a trustee's sale in 1986.

Respondent received notice of the partnership's bankruptcy proceeding and filed proofs of claim therein for various taxes on October 16, 1985, July 24, 1986, and August 6, 1986. On February 24, 1986, the partnership's bankruptcy proceeding was converted to a proceeding under Chapter 7 of the Bankruptcy Code. After February 24, 1986, Chef's Choice ceased all activities and maintained no office.

On December 23, 1987, respondent notified the prior tax matters partner of the partnership that his partnership items were to be treated as nonpartnership items pursuant to section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987) (relating to the treatment of partnership items of a partner who is subject to a criminal investigation). By letter of the same date, respon-

dent notified petitioner, Mr. Burke, that respondent had selected him to serve as tax matters partner for the partnership's 1982, 1983, and 1984 tax years pursuant to section 6231(a)(7).[1] Also, on December 23, 1987, respondent mailed a notice of final partnership administrative adjustment (the FPAA) for the tax years 1982 and 1983 to Mr. Burke in his capacity as tax matters partner. Respondent mailed a copy of the FPAA to Mr. Burke in his capacity as a notice partner on or about January 26, 1988.

On March 23, 1988, Mr. Burke filed a petition for readjustment of partnership items with this Court as a partner other than the tax matters partner. The case was set for trial at the Houston, Texas, trial session beginning on March 12, 1990. On March 12, 1990, petitioner filed with the Court a "Motion to Dismiss For Lack of Jurisdiction" and an alternative "Motion for Summary Judgment." The parties jointly filed with the Court a "Stipulation of Facts (Including Applicable State Law)." In addition, the parties filed a "Stipulation of Settled Issues Contingent on Outcome Of Jurisdiction Issue," which disposed of all issues other than the issue raised by petitioner's motions.

In support of the motion to dismiss for lack of jurisdiction, petitioner argues that the partnership dissolved and was terminated under California law no later than 1986 after it filed for bankruptcy and was divested of substantially all of its assets (e.g., its real property). Petitioner argues that, under both California law and general principles of Federal law, the partnership had no legal existence after February 24, 1986, and therefore the selection by respondent of a tax matters partner on December 23, 1987, and the issuance of the FPAA are nullities. Petitioner also argues that neither the partnership nor any of its former partners had the capacity to commence judicial proceedings following the dissolution and termination of the partnership. Thus, petitioner contends, the partnership level audit and litigation procedures (the partnership procedures) enacted in the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 648 (TEFRA 1982), could not operate with

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

respect to the partnership. Petitioner argues that since the FPAA which respondent issued with respect to the partnership's 1982 and 1983 tax years was invalid, this Court has no jurisdiction to readjust the partnership items adjusted therein.

In the alternative motion for summary judgment, petitioner raises all of the same arguments made in connection with the motion to dismiss for lack of jurisdiction and points out that the facts herein are not materially in dispute. Petitioner concludes, based on the undisputed facts, that the FPAA issued by respondent was invalid, and, therefore, the adjustments proposed therein are erroneous and unlawful. Thus, according to petitioner, summary judgment is appropriate.

We first address petitioner's argument that the partnership audit and litigation procedures (sec. 6221 et seq.) are inapplicable and inoperative with respect to Chef's Choice because, according to petitioner, the partnership had terminated prior to the issuance of a valid FPAA. Petitioner bases this argument on the contention that, in enacting the partnership procedures, Congress chose to adopt the "entity theory of jurisprudence." In other words, petitioner contends that the partnership procedures involve the partnership entity itself rather than a conglomeration of individual partners. Petitioner argues that, once Chef's Choice ceased to exist as an entity, the partnership procedures ceased to have effect with respect to the partnership.

We disagree. Sec. 701 provides that a partnership is not a taxable entity for Federal income tax purposes. Rather, under the Internal Revenue Code, a partnership represents a conglomeration of taxable individuals who have joined together in good faith and with a business purpose to presently conduct an enterprise. *Commissioner v. Culbertson,* 337 U.S. 733 (1949); *Hensel Phelps Construction Co. v. Commissioner,* 74 T.C. 939 (1980), affd. 703 F.2d 485 (10th Cir. 1983). Under this so-called "aggregate" theory, each individual partner must report and pay tax on his distributive share of partnership income. Sec. 701. The partnership is, however, required to file an information return stating specifically its gross income, deductions,

credits, etc., as well as each partner's distributive share of such items. Sec. 6031(a).

Prior to the enactment of the partnership procedures in TEFRA 1982, each partner's tax liability with respect to partnership items was determined independently of what any other partner's tax liability in respect of identical items might have been. H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 600, 662; *Maxwell v. Commissioner,* 87 T.C. 783, 787 (1986). An administrative settlement agreed to by one partner with respect to such partnership items was not binding on any other partner. In addition, a judicial determination of an issue relating to a partnership item was binding only on those partners who were parties to the judicial proceeding. Thus, numerous separate proceedings brought by various partners, yet involving the very same partnership items and issues, might go forward and possibly result in disparate and inconsistent treatment.

In enacting the partnership audit and litigation procedures, Congress contemplated the use of a unified proceeding in which all items of partnership income, loss, deduction, or credit that affect each partner's tax liability would be uniformly adjusted at the partnership level. H. Rept. 97-760, 1982-2 C.B. at 662; *Harrell v. Commissioner,* 91 T.C. 242, 243 (1988); *Maxwell v. Commissioner, supra* at 787. No longer would the tax treatment of partnership items be determined unique to each partner in separate proceedings. *Harrell v. Commissioner, supra* at 243; *Maxwell v. Commissioner, supra.* Instead, one judicial proceeding would go forward. H. Rept. 97-760, 1982-2 C.B. at 664. Therefore, despite the fact that a partnership is not a taxable entity under the Internal Revenue Code, "In the litigation context, Congress adopted the so-called 'entity theory' of partnership jurisprudence." Sec. 6221; *Tempest Associates, Ltd. v. Commissioner,* 94 T.C. 794, 802 (1990). However, this does not cause a proceeding with respect to readjustment of partnership items to be a proceeding of the partnership rather than a proceeding of the partners.

Although Congress chose to have the tax treatment of partnership items determined at the entity level, we do not agree with petitioner that Congress abandoned the "aggregate" theory of partnership jurisprudence in the litigation

context or any other context. In *1983 Western Reserve Oil and Gas Co. v. Commissioner,* 95 T.C. 51 (1990), creditors and limited partners instituted involuntary bankruptcy proceedings against the partnership involved on May 29, 1986. Respondent mailed triplicate original FPAA's to the tax matters partner of the partnership on March 13, 1987. The question in *1983 Western Reserve Oil and Gas Co.* was whether 11 U.S.C. sec. 362(a), the automatic stay provisions of the Bankruptcy Code, applied to prevent the individual partners of a bankrupt partnership from filing petitions for redetermination of the partnership adjustments determined by respondent in the FPAA.

In answering this question, we pointed out that, although the purpose of a partnership proceeding is to redetermine the adjustments made in an FPAA, it was the tax liability of the individual partners which was ultimately affected by the proceeding. We then stated that:

To argue that the partnership proceeding requires the Tax Court to make determinations with respect to the items of income, gain, loss, or credit of the partnership, rather than the individual partners, and that a partnership proceeding involving a bankrupt partnership thus "concerns" the partnership, not the partner, is to exalt form over substance. [*1983 Western Reserve Oil and Gas Co. v. Commissioner,* 95 T.C. at 57.]

In *1983 Western Reserve Oil and Gas Co.,* we noted that even under pre-TEFRA law, the starting point in reviewing a deficiency determined against an individual partner was adjustments made at the partnership level. We also noted that, under pre-TEFRA law, the bankruptcy of the partnership would not preclude the individual partner from filing a petition to redetermine a deficiency which included partnership adjustments. We then stated that, "We see no reason for a different rule simply because adjustments to a partnership return are now redetermined in a unified proceeding binding on all partners who are parties." *1983 Western Reserve Oil and Gas Co. v. Commissioner,* 95 T.C. at 58-59. We concluded that the partnership bankruptcy proceeding involved a different party (e.g., the partnership) than the TEFRA partnership proceeding and, therefore, the automatic stay provisions of the bankruptcy Code did not prevent the individual partners from filing a petition in this Court.

Contrary to petitioner's claims herein, by enacting the partnership audit and litigation procedures, Congress did not endow the partnership entity with a juridical existence for Federal income tax purposes and, in the process, make its partners mere representatives. Rather, the partners whose tax liabilities will be affected by the outcome of a partnership proceeding continue to be the real parties in interest in any partnership audit or litigation proceeding. *1983 Western Reserve Oil and Gas Co. v. Commissioner,* 95 T.C. 51, 57-59 (1990). The partnership proceeding contemplated by Congress is simply a conglomeration or aggregation of these affected partners.

The partnership audit and litigation provisions (sec. 6621 et seq.) support this view. Under sec. 6223, the Secretary is generally required to provide notice of the beginning and completion of an administrative proceeding at the partnership level to each individual partner in a partnership. He is not, however, required to provide notice to the partnership entity itself. Under sec. 6226(a), it is the tax matters partner and then a notice partner who may file a petition for readjustment of partnership items. We also note that under the statute and our rules, it is not the partnership, but the partner filing a petition in the Tax Court, who is the petitioner. *1983 Western Reserve Oil and Gas Co. v. Commissioner,* 95 T.C. at 59.

It is clear from provisions of the law and our holding in the *1983 Western Reserve Oil and Gas Co.* case that the partners and the tax matters partner, rather than the partnership entity itself, are the essential parties in a partnership audit and litigation procedure. The Tax Court Rules of Practice and Procedure governing partnership actions (Rule 240 et seq.) confirm that it is the partners, rather than the partnership entity itself, who are affected by the outcome of a partnership action in the Tax Court and, thus, are the real parties in interest. Rule 241; Rule 247. Since, under the partnership audit and litigation procedures, the partnership is not a party in interest in the partnership action, the dissolution or termination of a partnership does not abate such action. Cf. *Oklahoma Natural Gas Co. v. Oklahoma,* 273 U.S. 257, 259 (1927). For the same reason, the fact that Congress did not specifically

authorize the issuance of an FPAA to a dissolved or terminated partnership, as it did a notice of deficiency in the case of a deceased or incapacitated individual or dissolved corporation, is of no great moment. We conclude that the continued existence of the partnership entity itself is not essential to the operation of the partnership procedures.

We further conclude that the applicability of the partnership audit and litigation procedures is to be determined at the end of the tax year or years with respect to which the FPAA has been issued. The dissolution or termination of a partnership in a year subsequent to the years adjusted by the FPAA has no effect on the outcome of a partnership action filed with respect to the years when the partnership was in existence.

While we have recognized that the absence of a tax matters partner does not invalidate the partnership proceeding, we have stated on numerous occasions that the continual presence of a tax matters partner to act on behalf of the other partners is essential to the proper operation of the partnership procedures since the execution of the tax matters partner's statutory duties will have a substantial effect upon the rights of all partners in the partnership. See *Seneca Ltd. v. Commissioner,* 92 T.C. 363, 366 (1989), affd. 899 F.2d 1225 (9th Cir. 1990); *Computer Programs Lambda v. Commissioner,* 90 T.C. 1124 (1988). Since the presence of a tax matters partner is essential, the authority of respondent prior to a petition's being filed in this Court to select and of this Court after the filing of the petition to appoint a tax matters partner exists with respect to a partnership even though it has been dissolved and its existence has been terminated subsequent to the years for which adjustments are involved.

Since we conclude that the parties in interest to this proceeding are the partners of Chef's Choice and not the partnership, we need not address the arguments of the parties concerning whether the partnership was merely dissolved under California law and had a continued existence to wind up its affairs or was terminated under California law. Because the partners are the real parties in interest and were provided adequate notice of respondent's determination, we hold that respondent's notice of final

partnership administrative adjustment is valid. See *Seneca Ltd. v. Commissioner*, 92 T.C. 363 (1989), affd. 899 F.2d 1225 (9th Cir. 1990). This Court has jurisdiction to hear the appeal brought from the valid FPAA notice and determine the proper readjustments, if any. We will deny petitioner's motion to dismiss for lack of jurisdiction. Since we conclude that respondent's notice of final partnership administrative adjustment is valid, we will deny petitioner's motion for summary judgment based on the claimed invalidity of the notice.

*An appropriate order will be issued.*