**Robert E. WALTHALL and Dorothy C. Walthall, husband and wife, and Jerry T. Dennis, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. A94–052 CV (JKS).**

United States District Court, D. Alaska.

Dec. 22, 1995.

---

John L. Hoffer, Jr., Fortier & Mikko, P.C., Anchorage, Alaska, for Plaintiffs Robert E. Walthall, Dorothy C. Walthall, and Jerry T. Dennis.

Robert J. Branman, Trial Attorney, Tax Division, United States Department of Justice, Washington DC, and Robert C. Bundy, United States Attorney, Anchorage, Alaska, for the United States.

## ORDER FROM CHAMBERS

SINGLETON, Chief Judge.

## I. INTRODUCTION

■■■ Plaintiffs, Robert Walthall, Dorothy Walthall, and Jerry Dennis bring this action against the United States, seeking declaratory and injunctive relief in the form of an order preventing the Government from upwardly adjusting their tax liability for certain tax years during the 1980's. The Government adjusted Plaintiffs' tax returns based upon the audits of three partnerships, Union Energy Drilling Fund ("Drilling"), Sente Equipment Ltd. ("Equipment"), and Union Film Ventures 1984–A ("Union Film"). Plaintiffs were indirect partners in these partnerships by virtue of their investment in Certainty Investment Club Partnership of Utah ("Club") and Sierra Investment Club ("Sierra"), which had in turn invested in Drilling, Equipment, and Union Film.[1] Plaintiffs contend that they did not receive due process of law in connection with the audits of the partnerships and that the results of the audits cannot therefore be made binding upon them or used as a basis for increasing their tax liability.[2] Plaintiffs allege federal question jurisdiction under two separate grounds. First, in their claim for a

---

1. The diagram below illustrates the relationship between the entities. The bracketed terms to the left of the diagram indicate the designation of the parties.

| (Top–Tier Partnerships) | Equipment | | Drilling | Union Film |
| (Pass–Through Partnerships) | Club | | Club | Sierra |
| (Indirect Partners) | Walthalls & Dennis | | Walthalls & Dennis | Walthalls |

2. Plaintiffs' claims arise under the Internal Revenue Code. All citations to statutes will be to that code unless otherwise indicated. The specific statutes which figure in this decision are 26 U.S.C. §§ 6221–6233. Those statutes contain a number of significant terms defined in section 6231, which will be used in this decision.

A "top-tier" partnership is a partnership whose partners are also partnerships. Drilling, Equipment, and Union Film were top-tier or source partnerships because Club and Sierra, themselves partnerships, were its partners. A "pass-through" partnership is a partner which is itself a partnership. § 6231(a)(9). Club was a partner in Drilling and Equipment, and Sierra was a partner in Union Film. Club and Sierra were pass-through partnerships. An "indirect partner" is a partner who holds his interest in a top-tier or source partnership through one or more pass-through partnerships. § 6231(a)(10). Plaintiffs were indirect partners in Drilling, Equipment, and Union Film by virtue of their ownership interest in Club and Sierra. Thus, the losses and credits of the top-tier partnerships (Drilling, Equipment, and Union Film), were distributed to the pass-through partnerships (Club and Sierra), and then eventually to the indirect partners (Plaintiffs). Finally, a "tax matters partner" is the person or entity designated by the partnership to represent it in its dealings with the IRS and the person or entity with primary responsibility for assuring that partners and indirect partners are kept informed of IRS actions which impact top-tier partnerships. §§ 6223(g), 6231(a)(7). Where the partnership does not select a tax matters partner, the statute provides that the person or entity having the largest ownership interest in the partnership is the tax matters partner. § 6231(a)(7)(B). It does not appear that Drilling, Equipment, or Union Film chose a tax matters partner, so that responsibility devolved on Club and Sierra, which owned the greatest interest in them. It is not clear who the tax matters partner for Club and Sierra were at any given time.

refund of taxes already paid in full but which are disputed, Plaintiffs allege jurisdiction pursuant to 28 U.S.C. § 1346. Second, in their claim regarding the taxes allegedly owed but have not yet been paid in full, Plaintiffs allege jurisdiction pursuant to 28 U.S.C. § 1331.[3]

Both parties have moved for summary judgment and their respective motions are ripe for decision. Docket Nos. 20 & 25. After carefully considering the stipulated facts filed by the parties, this Court concludes that 26 U.S.C. § 6223 assures affected taxpayers the notice and opportunity to be heard that is due them under the Fifth Amendment to the United States Constitution before their property rights may be adjusted, and is therefore constitutional. The Court further concludes that Plaintiffs received the notice guaranteed them by the statute. The Government's motion for summary judgment is therefore granted as to all causes of action except the sixth and seventh.[4]

## II. FACTS

In 1983, the Walthalls invested $39,000 in United States, 759 F.2d 1378, 1380–82 (9th Cir. 1985). There is no room to distinguish this mandatory authority. Plaintiffs merely argue that the Ninth Circuit is wrong. The Ninth Circuit is not wrong, and if it were, this Court is nonetheless bound by its authority. As Plaintiffs correctly quote:

> However, we also conclude that once a revenue bill has been initiated in the House, the Senate is fully empowered to propose amendments, even if their effect will be to transform a proposal lowering taxes into one raising taxes. We therefore conclude that the Senate did not exceed its authority under the Origination Clause when it proposed extensive amendments that ultimately became TEFRA.

Armstrong, 759 F.2d at 1381–82. Plaintiffs' twelfth cause of action, asserting that TEFRA violates the Origination Clause of the United States Constitution, is dismissed.

Plaintiffs assert, in their sixth cause of action, that the Government assessed $7,737.00 against them on account of the items apparently from Sierra for 1982. The Walthalls allege that they did not report any such items for the 1982 tax year. The Walthalls allege that they purchased an interest in Sierra in 1984, but did not carry back any of Sierra's losses to 1982. There exist no motions pertaining to this cause of action and thus this issue remains for trial. Docket No. 4 (amended complaint).

Plaintiffs assert, in their seventh cause of action, that the Government failed to provide a deduction under I.R.C. § 221 in the amount of $535.00, and caused a $68.00 overcharge by incorrectly denying a reported $312.00 credit. The issues presented in Plaintiffs' seventh cause of action remain for trial. Docket No. 4 (amended complaint).

The Government's motion to dismiss Plaintiffs' first through fifth and eighth through eleventh causes of action is granted. Further proceedings will be required regarding the sixth and seventh causes of action.

---

3. The United States initially moved to dismiss this action, arguing that it conflicted with the Anti–Injunction Act. Docket Nos. 35 & 21; see 26 U.S.C. § 7421. The Government also moved, at Docket Nos. 31 & 34, for leave to file an amended answer containing counterclaims against Plaintiffs. The Court granted its motion for leave to file amended answer asserting counterclaims against Plaintiffs for the collection of unpaid taxes. Docket No. 44. Resolution of the Government's claim will require consideration of all issues Plaintiffs wish to raise. Thus, this Court has jurisdiction and the motion to dismiss was denied as moot. Id.; see, e.g., 28 U.S.C. §§ 1340, 1345; see also 26 U.S.C. § 7402(a).

4. Plaintiffs assert, in their first through fifth causes of action, that TEFRA guarantees indirect partners notice and an opportunity to be heard regarding the audits of top-tier partnerships. Plaintiffs further assert that they were not afforded notice and an opportunity to be heard and that the audits of the top-tier partnerships are therefore invalid and cannot be applied to their detriment. These claims are dismissed. TEFRA did not mandate the Secretary to provide notice directly to indirect partners. The Government complied with the notice requirements set forth in TEFRA.

Plaintiffs assert, in their eighth through eleventh causes of action, that TEFRA violates the Fifth Amendment to the United States Constitution if it does not require the Government to provide personal notice and an opportunity to be heard to indirect partners of top-tier partnerships. TEFRA does not afford such notice, but rather, provides that the Government shall provide notice to the pass-through partners. Notice to the pass-through partners is imputed to the indirect partners. As a result, the notice afforded to the indirect partners is sufficient to withstand Fifth Amendment scrutiny. Plaintiffs' eighth through eleventh causes of action are therefore dismissed.

In their twelfth cause of action, Plaintiffs assert that TEFRA violates the Origination Clause of the United States Constitution. Docket No. 25 at 39. The Ninth Circuit Court of Appeals has rejected Plaintiffs' argument on this issue. Armstrong v.

Club.[5] Docket No. 20 at 4; Docket No. 23 at 1 (Stipulated Facts). Dennis also became a partner of Club in 1983, investing $25,000. Docket No. 23 at 2. It appears that Plaintiffs were unaware that Club was in turn a partner in Drilling and Equipment. Docket No. 20 at 5; Docket No. 23 at 3. Drilling and Equipment each filed partnership tax returns for the 1983 and 1984 tax years. *Id.* Drilling claimed an ordinary loss in excess of $3.5 million for 1983 and Equipment claimed an ordinary loss of nearly $2 million in 1983 and over $2.5 million in 1984. *Id.* Club owned 99% of Drilling and Equipment and thus claimed approximately $4.5 million in ordinary losses for 1983 and approximately $2.4 million in 1984. Docket No. 20 at 5.

The Drilling and Equipment losses were passed down to Club and then those losses and certain tax credits were distributed to the partners of Club, including the Walthalls and Dennis. 26 U.S.C. §§ 702–04. As a result of these tax credits, the Government issued approximately $61,000 in refunds to the Walthalls. The Government refunded $11,372 of this amount for taxes withheld in 1983, whereas the remaining $50,441 was a refund resulting from a "carry back" of the Club tax credit to the Walthalls' 1980, 1981, and 1982 tax years. Docket No. 20 at 6. Thus, for an investment of $39,000, the Walthalls received back nearly $61,000 from the Government in a single year. Docket No. 20 at 7.[6]

For his $25,000 investment in Club, Dennis recovered approximately $10,000 in 1983 tax withholdings from the Government, and nearly $30,000 for taxes paid in 1980, 1981, and 1982, for an approximate total of $39,000. Docket No. 20 at 7; Docket No. 23 at 25–26.

Drilling, Equipment, and Union Film were audited pursuant to TEFRA[7] and the Government determined that their losses and credits, which were passed through to Club and Sierra, and thereafter distributed to Plaintiffs and other indirect partners, should be disallowed. Docket No. 23 at 8. This determination in turn caused a readjustment of Plaintiffs' tax liability, requiring Plaintiffs to repay the tax benefits they claimed. *Id.* at 10, 11, 22. It is from this adjustment of their tax liability that Plaintiffs appeal.

## III. DISCUSSION

Plaintiffs argue that the Government incorrectly interpreted and applied TEFRA, claiming that the statute specifically requires the Government to provide notice to indirect partners. Plaintiffs argue, in the alternative, that if TEFRA does not provide that the Government must give notice to indirect partners, TEFRA is unconstitutional. Plaintiffs also complain that the Government's interpretation of the statute is unfair because Plaintiffs stand to lose not only their tax savings, but also their initial investment in Club, because the originators of Club are in jail and are judgment proof. Plaintiffs trace their difficulties to the Secretary's failure to notify them of the administrative proceedings regarding Drilling, Equipment, and Union Film. In their view, because the Secretary failed to provide notice, their tax returns should be immune from readjustment.[8]

---

5. The name of this partnership was later changed to Sente Investment Club Partnership of Utah. It was under this name that it litigated the issues discussed in this decision before the tax court. *See, e.g., Sente Inv. Club Partnership of Utah v. C.I.R.,* 95 T.C. 243 (1990).

   Walthall also invested in another partnership, Sierra Investment Club ("Sierra"), which in turn was a pass-through partner in Union Film Ventures 1984–A ("Union Film") but the issues presented by those transactions are virtually identical to those presented in this case. Identical issues affecting John J. Camacho and his wife Barbara A. Camacho and David March Raihl and his wife June Shirley Raihl are also being considered in this decision in connection with appeals they took from decisions of the bankruptcy court. The Government has also cross appealed in those

cases. The Walthall, Raihl, and Camacho cases have been consolidated into this case.

6. The Walthalls also became a partner in Sierra Investment Club ("Sierra"). Docket No. 23 at 8 & 17. Like Club, Sierra was a pass-through partnership that became a partner in another partnership, Union Film Ventures 1984–A ("Union Film"). *Id.* at 18.

7. Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324 (codified at 26 U.S.C. §§ 6221–6233 (1982) (incorporating the Tax Treatment of Partnership Items Act of 1982).

8. It is difficult to see how Plaintiffs were prejudiced by the alleged lack of notice. The most

■ Plaintiffs' main complaint is that Congress placed the primary responsibility for keeping indirect partners informed of adjustments at the partnership level of multi-tiered partnerships on the pass-through partnerships and particularly their managing agents or general partners, which the code calls the tax matters partner, rather than on the Secretary. In Plaintiffs' view, this is unfair because many tax matters partners, particularly in syndicated partnerships, are crooks who will not keep their victims informed. Plaintiffs' arguments betray a fundamental misunderstanding of the law of agency and particu-

notice would have assured Plaintiffs was the opportunity to participate in the administrative proceedings regarding Drilling, Equipment, and Union Film at the partnership level and seek judicial review of an adverse decision. But Plaintiffs seem to concede that the men who developed these partnerships were criminals and that their tax avoidance scheme was a tax evasion scheme. If so, Plaintiffs' participation would have had little effect on their ultimate tax liability. Plaintiffs have not proffered any defense that could have, but was not, advanced by Drilling, Equipment, or Union Film. *See Carey v. Piphus*, 435 U.S. 247, 259–64, 98 S.Ct. 1042, 1050–52, 55 L.Ed.2d 252 (1978) (discussing proximate cause, and by implication, harmless error in due process deprivation cases). Plaintiffs do argue that Club's principals botched their participation in the proceeding before the tax court, but unless there was an argument to make, the failure to make an argument does not appear prejudicial. Plaintiffs may be arguing that had they received earlier notice, they would have been alerted to the fact that they had been swindled by Club's principals and thus would have had an opportunity to pursue the principals while they were still solvent. In other words, the Secretary owed Plaintiffs a duty to notify them regarding the tax troubles of Drilling, Equipment, and Union Film and should be liable in tort for this failure to perform that duty. If this is the claim, Plaintiffs' cause of action would be under the Federal Tort Claims Act, not the Internal Revenue Code.

Part of Plaintiffs' difficulty is their assumption that where the Secretary fails to give proper notice at the partnership level, indirect partners are immune from a later assessment and adjustment of their tax liability. This is not the law. Congress has specifically provided, in section 6223(e), the consequences that follow when the Secretary fails to give the notices required in section 6223(a) within the time limitations in section 6223(d). Where the Secretary is merely dilatory in sending notice and the proceedings at the partnership level are still in progress, the taxpayer may elect to participate in the partnership level proceedings, and in default of an election, the contested items will be treated as nonpartnership items and the disputes resolved in conjunction with the individual partner's return. *See* § 6223(e)(3). In the more common case, where the Secretary disputes the need to give notice and therefore gives no notice at all until directed by some court to do so, or where the Secretary does give notice but so late that the proceedings at the partnership level are complet-

ed, the taxpayer may elect to be bound by the resolution at the partnership level, or in default of an election, the items will be treated as nonpartnership items and assessed and resolved at the level of the individual partner. § 6223(e)(2). Plaintiffs seem to think that if the Secretary delays in giving notice to indirect partners, who should be treated as notice partners, until after the limitation period for individual assessment has passed, mistakenly assuming that there is no duty to give notice, the taxpayer has escaped adjustment to his or her return.

Where the normal statutory period for assessment has run prior to resolution of the proper taxation of the items in question and the taxpayer, in effect, elects or defaults in electing so that the items are converted from partnership items to non-partnership items, Congress has extended the statute of limitations for one additional year to permit assessment and resolution at the individual taxpayer's level. *See, e.g.,* § 6229(f) (period of limitations affecting items that become non-partnership items), which incorporates by reference section 6231(b)(1)(D), which cross-references section 6223(e). Although section 6229(f) assumes that the determination that an item is a non-partnership item will be made within the time limits allowed by section 6229(a), that time will always be extended in cases of tax evasion schemes. § 6229(e). Plaintiffs do not contend that they lacked notice of the adjustments to Drilling, Equipment, and Union Film within the time allowed by section 6229(c).

The same result follows an alternate route. Section 6229(e) defines "Unidentified Partners" as indirect partners who have failed to provide express notice to the Secretary in compliance with section 6223(c). For "Unidentified Partners," the limitations period does not run until one year after express notice of their interest is furnished to the Secretary. Mere listing on the pass-through partnership return does not constitute express notice. *Costello v. United States*, 765 F.Supp. 1003, 1006–11 (C.D.Cal.1991). Thus, reading all of these provisions together, it is clear that Congress intended to require indirect partners to rely upon the tax matters partners of the pass-through partnerships in which they have invested. In the alternative, indirect partners who independently determine which top-tier partnerships their pass-through partnerships have invested in may give the Secretary express notice that they are indirect partners by virtue of their partnership interest in the pass-through partnership and that they wish to receive inde-

larly that part of the law of agency governing partnerships. As we shall see, Congress simply relied upon the common law principles enshrined in the Uniform Partnership Act that each general partner is an agent of all partners, and notice to one partner is notice to all.[9]

Legal scholars have debated the nature of "partnerships" for many years. *See United States v. Basye,* 410 U.S. 441, 447–49, 453–57, 93 S.Ct. 1080, 1084–85, 1087–89, 35 L.Ed.2d 412 (1973); *see also* Donald J. Weidner, *A Perspective To Reconsider Partnership Law,* 16 FLA.ST.U.L.REV. 1 (1988). One school of thought views a partnership as an entity; a venture having an existence separate and distinct from its partners akin to a corporation or other form of state chartered business association. Alternatively, a partnership may be viewed as an aggregate, an assemblage of people working together. The Uniform Partnership Act, which has been enacted in most states, is a compromise between the two views. It defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Alaska Stat. § 32.05.010.[10] Each partner is an agent of the partnership for partnership purposes (Alaska Stat. § 32.05.040), and by extension, each partner is an agent for every other partner for purposes of partnership property. *See, e.g., Friend v. H.A. Friend & Co.,* 416 F.2d 526, 533 (9th Cir.1969); *Stork Restaurant v. Sahati,* 166 F.2d 348, 361–62 (9th Cir.1948). Consequently, notice to one partner regarding a matter of importance to the partnership is notice to every partner. Alaska Stat. § 32.05.070; *Friend,* 416 F.2d at 533.[11]

The general law governing partnerships carries over to the law of taxation with some limitations. For tax purposes, the aggregate theory applies. While a partnership

---

pendent notice of adjustments to the top-tier partnership returns at the partnership level.

9. The taxpayers reside in this district. The partnerships were apparently formed in Utah. The Uniform Partnership Act of 1914 ("UPA") has been adopted in both Alaska and Utah. *See, e.g.,* Alaska Stat. § 32.05.010, *et seq.* and Utah Code Ann. § 1953 48–1–1, *et seq.* The commissioners on Uniform State Laws have promulgated an updated version of the UPA. *See* Revised Uniform Partnership Act of 1994. But as of this writing, neither Alaska nor Utah has adopted the revised version. Since the partnerships under consideration in this decision have some of the indications of a limited partnership, it should also be noted that both Alaska and Utah initially adopted the Uniform Limited Partnership Act of 1916 ("ULPA"), and then replaced it with the Revised Uniform Limited Partnership Act of 1976 ("RULPA"). *See* Alaska Stat. § 32.11.010, *et seq.;* Utah Code Ann. § 1953, 48–2A–101, *et seq.* (as amended). Since the law of Utah and the law of Alaska are the same, and the principles involved are uniform among the several states, they may be considered in connection with the issues presented in this case. For convenience, the Court will cite to the Alaska versions of these acts, but in so doing, is applying a uniform common law of partnership applicable everywhere except as modified by statute.

For purposes of this decision, it is important to recognize that the UPA applies to limited partnerships unless a specific provision of the latter act applies. *See* Alaska Stat. § 32.11.890. The RULPA does not change the rule that the general partner is an agent of the partnership and notice to the general partner regarding partnership business binds the limited partners. *Howard v.* *Hamilton,* 28 N.C.App. 670, 222 S.E.2d 913 *cert denied,* 290 N.C. 94, 225 S.E.2d 323 (1976).

10. While the definition in the UPA refers to "persons," which suggests living individuals, it is generally understood that this term allows a partnership to include other partnerships among its members, and in some states a corporation can be a partner. *See* Meigs, Johnson, & Keller, ADVANCED ACCOUNTING, 3 (New York: McGraw Hill Book Company 1966). This flexibility in the definition of partnerships is recognized in the tax code. *See* 26 U.S.C. § 761, which provides:

(a) Partnership—For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or trust or estate. . . .

Thus, a partnership is defined as a default category which covers business organizations that are not corporations or other specifically defined categories *i.e.,* estates and trusts. As partnerships have blossomed as "tax shelters," problems of taxation have become significant. *See, e.g., Midcontinent Drilling Associates v. C.I.R.,* 1994 WL 91170 (U.S. Tax Court 1994); Donna D. Adler, *Master Limited Partnerships,* 40 UNIV.FLA. L.REV. 767 (1988).

11. The rules regarding notice are a result of the determination to make each partner an agent of the partnership. *See, e.g.,* Restatement (Second) Agency § 9(c) (notice to the agent is notice to the principal); *see also* § 10 (knowledge of principal and agent *inter se* ).

must file a partnership return (*see* 26 U.S.C. § 6031), it serves as a conduit through which the profits and losses of the enterprise pass down to the individual partners in the manner provided for in the partnership agreement and are taxed directly to the partner. *See* 26 U.S.C. § 701; *Basye,* 410 U.S. at 448 n. 8, 93 S.Ct. at 1085 n. 8; *Chef's Choice Produce Ltd. v. C.I.R.,* 95 T.C. 388, 391–92 (1990). As partnerships became vehicles for massive syndications spreading across district and circuit lines, traditional practices for taxing partnerships became problematic. Where gains and losses of the partnership are distributed to each partner and such partnership items are determined and adjudicated independently, the risk of inconsistent rulings regarding items attributable to a multi-state partnership increases. As a result, Congress took a step towards treating partnerships as an entity by enacting the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). 26 U.S.C. §§ 6221–6233 (1982); *see Chef's Choice,* 95 T.C. at 393–94; *see also* Staff of the Joint Committee on Taxation, 97th Cong., 2nd Sess., *General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982,* at 268 (explaining that the fragmented nature of determining the tax liability of partners created administrative problems prior to TEFRA, and that such problems became excessively burdensome as partnership syndications developed and grew over the recent years—making the identification of taxpayers in tiered partnerships difficult).

The purpose of this statute is to provide a single unified audit and judicial proceeding in which all items of partnership income, loss, deduction, or credit that will affect each partner's tax liability will be uniformly adjusted at the partnership level. 26 U.S.C. § 6221.[12]

For present purposes, this change eliminated each individual partner's opportunity to litigate partnership gains and losses individually, in connection with their own returns. Litigation must now take place at the partnership level, and each partner is bound by the result. 26 U.S.C. § 6226. As a partial compensation for this change, and to assure that interested partners will have an opportunity to contest an adverse audit (*see, e.g.,* 26 U.S.C. § 6224, which provides that any partner has the right to participate in any administrative proceeding relating to the determination of partnership items at the partnership level), Congress requires the Secretary to notify certain identified partners of two significant events: 1) the beginning of administrative proceedings ("NBAP"); and 2) the final partnership administrative adjustment resulting from such proceedings ("FPAA"). 26 U.S.C. §§ 6223(a)(1) and (2).

■ Plaintiffs contend that they did not have actual notice of the administrative proceedings that resulted in the adjustments about which they complain and therefore did not have an opportunity to participate and seek judicial review of an adverse decision. They argue that they did not receive the notice to which they were entitled under the statute, and if they did receive such notice, it was constitutionally ineffective to permit an upward adjustment of their taxes.

■ The partnership items under consideration were those of Drilling, Equipment, and Union Film. The Secretary was required to give notice to each partner. Club was a partner in Drilling and Equipment, and Sierra was a partner in Union Film. Both Club and Sierra were given the requisite notice.[13]

---

**12.** The term "partnership item" is important to this discussion. It is defined as any item which, under the regulations governing a specific partnership, is more appropriately determined at the partnership level than at the partner level. 26 U.S.C. § 6231(a)(3). The investment credits and partnership losses of Drilling, Equipment, and Union Film which are at issue here are "partnership items." *See Sente,* 95 T.C. at 247.

**13.** Plaintiffs argue that the Government has not sustained its burden of proving that any of the notices required by section 6223(a) were sent to

the "notice partners." As is customarily Congress' practice, the Secretary is required to prove that notice was mailed, not that it was received. *See* § 6223(a); *see also United States v. Zolla,* 724 F.2d 808 (9th Cir.1984); *United States v. Wright,* 658 F.Supp. 1 (D.Alaska 1986); and *United States v. Arford,* 71 A.F.T.R.2d 93–718, 1993 WL 120365 (D.Idaho 1993). The Court is satisfied that the mailing certifications referenced in the stipulated facts are sufficiently similar to those found sufficient in *Zolla,* that they establish that the necessary notices were mailed in the absence of any contrary evidence by Plaintiffs. *Zolla,* 724

Plaintiffs were partners in Club and Sierra, but only indirect partners in Drilling, Equipment, and Union Film. Their right to statutory notice depends upon whether the Secretary had received express notification of Plaintiffs' names and addresses in conjunction with Drilling, Equipment, and Union Film more than thirty days prior to the date the Secretary was required to send notice. 26 U.S.C. § 6223(a). In order to understand whose names and addresses the Secretary will be deemed to have in his information base for purposes of section 6223(a), we must look to section 6223(c), which governs the information base from which a determination of the Secretary knowledge of "notice partners" must be determined.

■ Anyone mentioned on the partnership return of Drilling, Equipment, and Union Film is within the knowledge base. § 6223(c)(1). Plaintiffs were not mentioned in the Drilling, Equipment, or Union Film returns. Anyone whose name was specifically furnished to the Secretary by the tax matters partner is also within the knowledge base. § 6223(c)(2). The tax matters partners of Equipment, Drilling, and Union Film did not furnish the Secretary with notice that Plaintiffs should be notified of administrative

proceedings regarding Drilling, Equipment, and Union Film.[14] The Secretary would have been required to send Plaintiffs notice by virtue of their indirect partnership interest in Drilling, Equipment, and Union Film only if either the Drilling, Equipment, or Union Film returns disclosed Plaintiffs' names as indirect partners, or the tax matters partner of Drilling, Equipment, Union Film, or some other person, notified the Secretary that an indirect partner had an interest in potential proceedings by virtue of his membership in one or more pass-through partnerships. § 6223(c)(3). Since Plaintiffs' names were not listed on the tax returns of Drilling, Equipment, or Union Film as indirect partners of pass-through partnerships, or in any other capacity, and neither the tax matters partners of Equipment, Drilling, Union Film, nor anyone else, furnished the Secretary with a separate notice of Plaintiffs' interest in Drilling, Equipment, and Union Film as indirect partners by virtue of their membership in pass-through partnerships (Club and Sierra), Plaintiffs were not entitled to notice of administrative proceedings affecting Drilling, Equipment, and Union Film. *Id.*

Plaintiffs raise three objections to this analysis. They first contend that the term

---

F.2d at. 810–11; *but see Farr v. U.S.*, 990 F.2d 451 (9th Cir.1993) (refusing to allow such evidence to be conclusive at the preliminary motion stage where no discovery allowed). In any event, the question of notice to Club was litigated before the tax court and a judgment rendered against Club on this point. *See Sente Inv. Club Partnership of Utah v. C.I.R.*, 95 T.C. 243 (1990) (holding that Club was bound by the audit of Drilling and Equipment at the partnership level because it had notice and an opportunity to be heard). Under normal partnership law, the judgment against Club, a partnership, is binding on Plaintiffs, its partners, at least as to matters actually litigated or which were necessary to the tax court decision. *See* Restatement (Second) Judgments § 60 (1982). *Sente Inv. Club* involved Club's right to litigate Drilling and Equipment losses at its level. The tax court dismissed Club's challenges to the Drilling and Equipment losses at that level, reasoning that it had jurisdiction over adjustments to Club's return, but not over adjustments to Club's returns which were based on prior adjustments to the returns of Equipment and Drilling. *Id.* Implicit in this decision is that Drilling, Equipment, and Club received the necessary notices regarding the Drilling and Equipment audits.

14. Plaintiffs argue that Club and Sierra were the tax matters partners of Drilling, Equipment, and Union Film and were thus authorized by section 6223(c)(2) to provide the Secretary with additional information regarding proper recipients of notice. Since Club owned more than 99% of the interest in Drilling and Equipment, and since Sierra owned more than 99% of the interest in Union Film, and no one else had been identified by Drilling, Equipment, or Union Film as the tax matters partner, this position is tenable. Plaintiffs then argue that Club and Sierra furnished the names and addresses of Plaintiffs to the Secretary by filing its own tax return, which disclosed that they were partners to Drilling, Equipment, and Union Film, thus making Plaintiffs indirect partners in Drilling, Equipment, and Union Film. Plaintiffs misunderstand the requirement of section 6223(c)(2). Club and Sierra could have expressly notified the Secretary that Plaintiffs were indirect partners of Drilling, Equipment, and Union Film and should be treated as notice partners of those partnerships, but they did not. Merely filing their own partnership tax returns is not the notification contemplated by the statute. *See Costello v. U.S.*, 765 F.Supp. 1003, 1006–11 (C.D.Cal.1991).

partner is defined in section 6231(a)(2)(B) to include indirect partners.[15] Plaintiffs are correct. They then argue that as an indirect partner in Drilling, Equipment, and Union Film, Plaintiffs were entitled to notice as a partner of Drilling, Equipment, and Union Film. § 6223(a). If the Secretary had knowledge of Plaintiffs' names and addresses from the returns of Club and Sierra, Plaintiffs overlook section 6223(c)(3), which serves to except indirect partners from the general notice provisions of section 6223(a) by modifying the "information base for Secretary's notice" and substituting special notice provisions. § 6223(c)(3). Under the special notice provisions, Plaintiffs were not entitled to notice because no one had specifically notified the Secretary of Plaintiffs' existence in connection with Drilling, Equipment, and Union Film.

■ Second, Plaintiffs argue that while their names were not listed in the returns of Drilling, Equipment, and Union Film, Club and Sierra were listed as partners. Had the Secretary researched the returns of either Club or Sierra, argues Plaintiffs, the Secretary would have found Plaintiffs and therefore should have considered these returns as part of the information base. Plaintiffs overlook section 6223(c), which defines the Secretary's information base for purposes of notice. The Secretary must look to the partnership returns of Drilling, Equipment, and Union Film, but is not required to go further and research the returns of their pass-through partnerships. *Compare* § 6223(c)(1) *with* § 6223(c)(2). Indirect partners must comply with section 6223(c)(3) if they are to be given notice. This makes sense.

Congress enacted TEFRA because of the complexities of modern partnerships. A given partnership may be a syndicate with liter-ally hundreds of pass-through partnerships. Each pass-through partnership may in turn have hundreds of indirect partners. To require the Secretary to research all of these returns to find potential indirect partners would defeat the whole purpose of TEFRA. Congress could conclude that it is much more reasonable to put the burden on the tax matters partner of pass-through partnerships to give notice to indirect partners, since, in most cases, the tax matters partner is either the managing partner or partner with the greatest interest in the partnership. Congress could further conclude that if an indirect partner wants to receive special notice, the tax matters partner could pass that information along to the Secretary. This is in fact how Congress decided to solve the notice problem. *See, e.g.*, §§ 6223(c)(2), 6223(g) and (h); *see also* § 6230(f) (failure of tax matters partner or pass-through partner to give notice does not affect the applicability of any proceeding or adjustment under this subchapter to such partner). Neither Plaintiffs, Club, Sierra, nor anyone else provided the Secretary with the specific notification required by section 6223(c), which is required before Plaintiffs would be added to the statutory mailing list for Drilling, Equipment, and Union Film. *See Costello*, 765 F.Supp. at 1006–11.

■ Finally, Plaintiffs argue that Congress required the Secretary to adopt regulations providing the means by which his information base would be expanded to include indirect partners and other parties interested in notice. § 6223(c)(2); *see also* § 6230(k) (Secretary shall prescribe such regulations as are necessary to carry out the purposes of this subchapter). The Secretary did adopt regulations, but they did not become final in time to benefit Plaintiffs.[16] In the absence of established procedures alerting Plaintiffs of

---

**15.** Section 6231 provides in part:
　(2) Partner.—The term "partner" means—
　　. . . .
　　(B) any other person whose income tax liability under subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership.

**16.** The Regulations referenced in section 6223(c)(3) were published in final form on March 5, 1987. 26 C.F.R. § 301.6223(c)–1T. Identical regulations had been published in pro-posed form on April 18, 1986. 51 Fed.Reg. 13,231. The NBAP's which would have alerted Plaintiffs to an audit of Drilling were sent to Club on April 26, 1986. Those for Equipment were sent on April 22, and June 11, 1986. Thus, even if we look to the proposed regulations, as opposed to the final regulations, Plaintiffs still would have had very little time to comply with section 6223(c) and participate in the administrative proceedings.

their duty to give notice to the Secretary of their interest in receiving notice, Plaintiffs contend that the Secretary should be required to research his records and give actual notice to all indirect partners. *See, e.g., United States Smelt., R. & M. Co. v. Local Bound. Comm'n,* 489 P.2d 140, 141–42 (Alaska 1971) (where Legislature imposes mandatory duty to enact regulations establishing standards on agency and agency fails to enact regulations, its further actions are void); *see also* SUTHERLAND STAT.CONSTR. §§ 57.14, 57.19, and 57.20 (4th ed.). Assuming that the Secretary was under a mandatory duty to establish regulations, it does not appear that Congress established a time limit. Nor does it appear that Plaintiffs were prejudiced by Secretarial delay. In *United States Smelt., R. & M. Co.,* the respondent was compelled to litigate a matter before an agency without understanding the ground rules. In contrast, Plaintiffs could, consistent with section 6223, have made some effort to alert the Secretary to their existence and interest in Drilling, Equipment, and Union Film. Had they done so, the Secretary would have been in a difficult position to argue that Plaintiffs' efforts were insufficient. Since Plaintiffs did not monitor the affairs of Drilling, Equipment, and Union Film, or take any steps to even monitor the investments of Club and Sierra, they are in a poor position to complain that the Secretary was dilatory in enacting regulations that would have explained how Plaintiffs should communicate their intent to take an active part in monitoring Drilling, Equipment, and Union Film's activities if they desired to do so.[17]

Plaintiffs argue that if the statute is interpreted in this manner, it is unconstitutional. They rely upon the Fifth Amendment to the United States Constitution, which prohibits Congress from depriving a citizen of property without due process of law, and decisions of the United States Supreme Court which interpret "due process" to require notice that is reasonable under the circumstances and an opportunity to defend before "property rights" protected by the constitution are disturbed. *See, e.g., Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Mennonite Bd of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); and *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Plaintiffs clearly had a property interest in the determination of partnership items at the partnership level. Plaintiffs were partners in Drilling, Equipment, and Union Film, albeit indirect, and as such had an interest in their profits and losses. Alaska Stat. § 32.05.210 (nature of interest in partnership); *see, e.g., Memphis Light Gas & Water Division,* 436 U.S. at 11–12, 98 S.Ct. at 1561 (discussing customer's right to utility services as property). Congress clearly intended that indirect partners, if they wished, could participate in the determination of partnership items at the partnership level. *See, e.g.,* §§ 6224(a), 6226(c). Consequently,

---

17. The Government argues that treasury regulations are retroactive to the effective date of the statute, which provides the authority for enacting the regulations unless the Secretary specifically provides that they should be partially or entirely prospective. *See, e.g., Redhouse v. C.I.R.,* 728 F.2d 1249, 1251 (9th Cir.1984). If Plaintiffs had read the statute, monitored the activities of Club and Sierra so that they were aware of the existence of Drilling, Equipment, and Union Film, desired to be kept informed of any action by the Secretary under 26 U.S.C. § 6221 *et seq.,* and having read section 6223(c), had attempted to comply by writing to the Secretary and disclosing their names and addresses, their interests in Club and Sierra, and the interest of Club and Sierra in Drilling, Equipment, and Union Film, this Court would find that Plaintiffs were notice partners even if they did not comply with some

arcane aspect of notice which appears in the regulations and not in the statute. In that sense, the regulations would not be applied retroactively. On the other hand, the Secretary may only mean that this Court should consider contemporaneous administrative interpretations of statutes by the affected agency in interpreting statutes like section 6223(c). A contemporaneous construction, so long as it is not aimed at this litigant and this litigation, is entitled to deference even if it comes after the parties' positions solidified in this case. Since the regulations apply generally, they are entitled to consideration in determining what information would have to be provided the Secretary to trigger the obligations in section 6223(c). *See, e.g., Chevron U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.,* 467 U.S. 837, 842–66, 104 S.Ct. 2778, 2781–93, 81 L.Ed.2d 694 (1984).

the constitution requires notice before Plaintiffs' rights may be affected.[18]

The question is what notice is reasonable. If Plaintiffs' identities were known or reasonably ascertainable to the Secretary, then they were entitled to actual notice. *Tulsa Professional Collection Services*, 485 U.S. at 490–91, 108 S.Ct. at 1347–48. It is not necessary to determine whether Plaintiffs' names and addresses were reasonably ascertainable because under the facts of this case Plaintiffs received actual, though not personal, notice.[19] Plaintiffs' primary error is to assume that section 6223, by limiting their right to personal notice to situations where they or someone on their behalf requests it from the Secretary prior to the institution of administrative proceedings and in default of a request leaves them to rely on their partners and particularly their tax matters partner to assure that their rights are protected, cuts back the notice they would have been entitled to at common law. But as we have seen, at common law, actual notice to one partner was actual notice to all partners and to the partnership. *Friend v. Friend & Co.*, 416 F.2d 526, 532 (9th Cir.1969).[20] Section 6223 expands on the notice Plaintiffs would have

been entitled to at common law. The notice required by the statute was provided, and as a consequence, the notice is reasonable under the circumstances.[21]

Plaintiffs also argue that the statutory scheme does not give indirect partners sufficient opportunity to participate in the determination of partnership items at the partnership level, even if they are notified. Indirect partners are allowed to participate. §§ 6224(a), 6226(c). It does not appear that the tax matters partner's power to bind the partnership regarding partnership property, including partnership gains and losses, exceeds that of any managing partner under the UPA and ULPA. *See, e.g.*, Alaska Stat. §§ 32.11.170, 32.05.040. In fact, it appears that Congress has given indirect partners greater rights than they would have under general partnership law. Finally, Plaintiffs argue that TEFRA unconstitutionally prohibits them from obtaining judicial review of an adverse administrative decision in United States District Court unless they pay the disputed tax first. *See* § 6226(e). This procedure is constitutional. *See Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Korobkin v. United States*, 988

---

18. The Government argues that Plaintiffs had no property interest in a distribution of the losses and credits in question because such an interest must be legitimate in order to be constitutionally protected. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Since, in the Secretary's view, the losses were not legitimately claimed, as proved by the audit, Plaintiffs had no right to them. The Secretary begs the question to be decided. As the Supreme Court points out, a right need not be undisputed in order to be a protected property right, so long as Congress has provided a procedure for litigating the right, its holder has a property right and is entitled to notice. *Memphis Light, Gas, & Water Div.*, 436 U.S. at 9–11, 98 S.Ct. at 1560–61.

19. Plaintiffs' names and addresses were discoverable if the Secretary researched the returns of each partnership to identify potential pass-through partnerships and then researched the returns of each pass-through partnership to discover its partners *i.e.*, indirect partners in the top-tier partnership. Bearing in mind the complexity of syndicates and multi-tiered partnerships, the Supreme Court would probably hold that Plaintiffs were ascertainable, but not reasonably ascertainable, under the circumstances. *Tulsa Professional Collection Services*, 485 U.S. at 491, 108 S.Ct. at 1348.

20. Consideration should also be given to Restatement (Second) Judgments § 60 (1982), which binds a partner by a judgment against the partnership even if he was not a party, but limits the conclusive effect of the judgment to the partner's interest in partnership property. Here, the property in dispute is the losses and credits of Drilling, Equipment, and Union Film *i.e.*, partnership property.

21. In a separate argument, Plaintiffs contend that TEFRA violates the Origination Clause of the United States Constitution, (Article I, § 7 cl. 1), because the Senate, rather than the House of Representatives, originated it. More accurately, the bill that became TEFRA began in the House of Representatives as a measure to reduce taxes and was totally changed in the Senate, except for the enacting clause. The argument is somewhat convoluted. Plaintiffs concede that the Ninth Circuit has rejected it, *see Armstrong v. United States*, 759 F.2d 1378, 1380–82 (9th Cir.1985), and that this Court is bound to follow *Armstrong* unless an *en banc* panel of the Ninth Circuit, or the United States Supreme Court, overrules it. *See, e.g., Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 972 n. 15 (9th Cir. 1994). Consequently, no further attention to this issue is warranted at this level of court.

**1288**

F.2d 975, 976 (9th Cir.1993); *Boynton v. United States,* 566 F.2d 50, 52 (9th Cir.1977).

### Conclusion

By giving notice to Club and Sierra, the Secretary gave notice to Plaintiffs. Consequently, the determination of partnership losses at the partnership level for Drilling, Equipment, and Union Film are binding on Plaintiffs and may not be re-litigated individually in connection with their returns.

### IT IS THEREFORE ORDERED:

The motion of the United States for partial summary judgment at Docket No. 20 is **GRANTED.** The cross motion for summary judgment at Docket No. 25 is **DENIED.**