**Kenneth L. ROWE, Plaintiff,**

v.

**UNITED STATES of America and Commissioner of Internal Revenue, Defendants.**

**Civ. A. No. 83–685 MMS.**

United States District Court, D. Delaware.

April 16, 1984.

10. From 1971 to 1978, Aberdeen Proving Ground lost almost 600 jobs.

Kenneth L. Rowe, Newark, Delaware, plaintiff pro se.

Joseph J. Farnan, Jr., U.S. Atty., and Richard G. Andrews, Asst. U.S. Atty., Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiff Kenneth L. Rowe has brought this action to set aside a $500 civil penalty imposed by the Internal Revenue Service ("IRS") for filing an allegedly frivolous income tax return.[1] Before the Court is defendant's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Because matters outside the pleadings have been considered the Court will treat defendant's motion under Rule 56.[2]

### Facts

On a Form 1040 dated December 30, 1982, plaintiff filed what purports to be his personal income tax return for the 1981 calendar year.[3] On that return, plaintiff provided his name and address and indicated that he did not wish to contribute to the Presidential Election Campaign Fund. The return did not contain any information regarding income, deductions, or tax owed. Instead, every line item requesting information contained either an asterisk or the word "none." At the top of the first page of his return plaintiff stated "I offer to amend or refile my return in any way you want if you can show me how I can do it without waiving my constitutional rights." On page two, plaintiff asserted objections on fourth and fifth amendment grounds. Plaintiff signed the return and attached a letter to the IRS explaining the basis for his responses and forwarding a compendi-

um of information on the federal personal income tax system.[4]

On March 18, 1983, the Commissioner of the IRS, pursuant to 26 U.S.C. section 6702, assessed a $500 penalty against plaintiff for filing a frivolous tax return. Plaintiff has paid fifteen percent of the penalty and is therefore entitled to challenge the penalty.[5] For the reasons explained below, the defendant's motion for summary judgment will be granted.

### Discussion

To deter the filing of frivolous tax returns, Congress added section 6702 to the Internal Revenue Code by enacting section 326(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97–248, 96 Stat. 324 (1982) (codified at 26 U.S.C. § 6702) ("TEFRA"). Section 6702 provides as follows:

Frivolous income tax return

(a) Civil penalty.—If—

(1) any individual files what purports to be a return of the tax imposed by subtitle A but which—

(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or

(B) contains information that on its face indicates that the self-assessment is substantially incorrect; and

(2) the conduct referred to in paragraph (1) is due to—

(A) a position which is frivolous, or

(B) a desire (which appears on the purported return) to delay or impede

---

**1.** Plaintiff names as defendants the United States and the Commissioner of Internal Revenue. Since the only proper defendant in a refund suit is the United States, 26 U.S.C. § 7422(f) (1982), the Court will dismiss the Commissioner from this action.

**2.** By letter dated March 27, 1984, the Court notified plaintiff that defendants' motion would be treated as one for summary judgment and gave him two weeks to supplement the record.

**3.** Plaintiff's tax return is attached as an Exhibit to the Declaration of Robert L. Gordon, Esq. (Dkt. 4).

**4.** The appended material is general protest literature challenging, among other things, the na-

tional income tax system, government spending, and federal reserve notes.

**5.** Internal Revenue Code section 6703 provides in pertinent part:

If, within 30 days after the day on which notice and demand of any penalty under section 6700, 6701, or 6702 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2)....

the administration of Federal income tax laws,

then such individual shall pay a penalty of $500.

The legislative history of TEFRA reveals that Congress intended to have the IRS Commissioner impose a penalty where (1) the individual files a "return" in which many or all of the line items are not answered except for references to spurious constitutional objections; (2) the form contains altered or incorrect descriptions of line items or other altered provisions; (3) the individual gives insufficient information to calculate the tax, provides inconsistent responses, or otherwise takes a frivolous position or evidences a desire to impede the tax laws; and (4) the return shows an incorrect tax due, or a reduced tax due, "because of the individual's claim of a clearly unallowable deduction, such as a 'gold standard deduction.'" S.Rep. No. 494, 97th Cong. 2d Sess. 277–78 (1982), *reprinted in* 1982 U.S.Code Cong. & Ad. News 781, 1024 (hereinafter cited as "S.Rep. at ——.").

Plaintiff raises numerous objections to the penalty assessed by the IRS.

## Origination Clause

■ Plaintiff argues that section 6702 is unconstitutional because TEFRA originated in the Senate in violation of article 1, section 7 of the United States Constitution (the "Origination Clause"). This constitutional provision states that "[a]ll Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Const. art. 1, § 7. A review of the legislative history of TEFRA indicates that plaintiff's argument is without merit.

On November 13, 1981, H.R. 4961, denominated "Miscellaneous Revenue Act of 1981," was introduced in the House of Representatives. Although the Senate amendment substituted an entirely new text for the House version, *see* 1982 U.S.Code Cong. & Ad.News 781, 781–1485, the bill began in the House for Origination Clause purposes. *See Frent v. United States*, 571 F.Supp. 739 (E.D.Mich.1983) (upholding TE-FRA against Origination Clause attack). *See also Flint v. Stone Tracy Co.*, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911) (upholding Senate's power to strike an inheritance tax originating in the House and substitute a corporate tax). Once a bill has passed the House, the Court perceives no constitutional reason why the Senate may not make amendments germane to the subject matter of the legislation. *Flint v. Stone Tracy Co.*, 220 U.S. at 143, 31 S.Ct. at 346. In this case, the House initiated the bill which ultimately became TEFRA; the fact that the Senate substituted a different version does not change the conclusion that constitutional prerequisites were satisfied.

## Due Process Challenge

Plaintiff complains that the penalty was assessed without a judicial ruling on the validity of his claims. According to plaintiff, due process requires a hearing on his objections before any penalty can be imposed. The legislative history of section 6702 reveals that Congress intended to have the fine imposed and then permit the taxpayer to seek judicial review (after filing a claim with the IRS and paying 15 percent of the penalty). According to the Senate report, immediate assessment was needed to maintain the integrity of the internal revenue system and to help deter the filing of non-responsive returns by those willing to play the "audit lottery." S.Rep. at 277.

The constitutionality of a scheme providing for only post-assessment judicial review is well settled. In *Dodge v. Osborn*, 240 U.S. 118, 122, 36 S.Ct. 275, 276, 60 L.Ed. 557 (1916), the Court summarily rejected the view that a post-assessment suit for a tax refund violated due process, stating that "we think it suffices to state that contention to demonstrate its entire want of merit." *Accord Phillips v. Commissioner*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (summary proceedings to secure prompt performance of tax obligations is constitutional where there is opportunity for a later judicial determination of legal rights). This principle was recently reaf-

firmed in *Bob Jones University v. Simon,* 416 U.S. 725, 746, 94 S.Ct. 2038, 2050, 40 L.Ed.2d 496 (1974), where the Supreme Court ruled that a tax may be assessed without a prior hearing as long as the taxpayer can subsequently sue for a tax refund.

■ For due process purposes, the civil penalty in this case is indistinguishable from the taxes assessed in *Dodge* and *Bob Jones.* Although the penalty is assessed immediately, Congress, in section 6703, gave the taxpayer the right to seek judicial review of the commissioner's action. The right to challenge the section 6702 penalty provides plaintiff with an adequate opportunity to present his claims. Plaintiff's due process rights are protected by this very proceeding.

**Vagueness**

■ Plaintiff complains that section 6702 is unconstitutionally vague because the statute does not define what constitutes a "frivolous" return. The Court finds, however, that the terms used in the statute provide "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan v. DeGeorge,* 341 U.S. 223, 231–32, 71 S.Ct. 703, 707–08, 95 L.Ed. 886 (1951). *See generally* Amsterdam, *The Void-for-Vagueness Doctrine in the Supreme Court,* 109 U.Pa.L.Rev. 67 (1960); *see also Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 1646, 40 L.Ed.2d 15 (1974) (statute is not unconstitutionally vague where it is set out in terms that the ordinary person exercising common sense can sufficiently understand and comply with). Frivolous is commonly understood to mean having no basis in law or fact. *See* Webster's Third New International Dictionary (1971). Accordingly, the Court finds no vagueness infirmity in the statute.

**Merits of the Section 6702 Penalty**

■ The final issue is whether the penalty was properly assessed.[6] Under

section 6702, the first inquiry is whether the return "does not contain information on which the substantial correctness of the self-assessment may be judged" or whether the return "contains information that on its face indicates the self-assessment is substantially incorrect." After examining plaintiff's return the Court finds, as a matter of law, that it failed to contain enough information to judge the "correctness of the self-assessment." Indeed, plaintiff's return contained no substantive information whatsoever. As explained by the Third Circuit Court of Appeals, "tax forms that do not contain financial information upon which a taxpayer's liability can be determined do not constitute returns within the meaning of the Internal Revenue Code." *United States v. Edelson,* 604 F.2d 232, 234 (3d Cir.1979).

The second inquiry is whether the conduct analyzed above is "due to a position which is frivolous" or "a desire (which appears on the purported return) to delay or impede the administration" of federal income tax laws. Defendant contends that plaintiff's return was both frivolous and evidenced a desire to impede the administration of the tax laws. Although the material attached to plaintiff's return may well support the inference that plaintiff was motivated by a desire to impede, this fact is not established for purposes of summary judgment. Consequently, the only issue is whether plaintiff's position was frivolous—that is, whether the deficiency in plaintiff's return was without basis in law or fact.

■ Plaintiff argues that his refusal to provide any substantive financial information is not frivolous. Specifically, plaintiff argues that he has a fifth amendment right to refuse to answer questions on a Form 1040, because such disclosure may be used against him in a subsequent criminal prosecution. The Court disagrees. It is settled that a taxpayer may not rely on the fifth amendment to refuse to provide *any*

**6.** In a challenge to a section 6702 penalty, the burden of proof is on the government. *See* 26

U.S.C. § 6703 (1982).

financial information on a federal income tax return. *See United States v. Sullivan,* 274 U.S. 259, 263, 47 S.Ct. 607, 71 L.Ed. 1037 (1927); *United States v. Heise,* 709 F.2d 449, 450 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 285, 78 L.Ed.2d 262 (1983); *United States v. Verkuilen,* 690 F.2d 648, 654 (7th Cir.1982); *United States v. Neff,* 615 F.2d 1235, 1239 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980); *United States v. Edelson,* 604 F.2d 232, 234 (3d Cir.1979). The Third Circuit Court of Appeals in *Edelson* explained that

> [a] tax form requires disclosure of routine information necessary for the computation of tax liability and does not ordinarily compel testimony about facts that might lead to a criminal prosecution. Federal income tax information is sought in a non-accusatorial setting and is not, as a general matter, extracted from a "highly selective group inherently suspect of criminal activities." *California v. Byers,* 402 U.S. 424, 430, 91 S.Ct. 1535, 1539, 29 L.Ed.2d 9 (1971). That such filings or the information contained therein may later appear in court to the detriment of the declarant does not, *ipso facto,* justify an assertion of the Fifth Amendment privilege. As the Supreme Court noted in *Byers:*
>
> > "Information revealed by these reports could well be 'a link in the chain' of evidence leading to prosecution and conviction. But under our holdings the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for . . . ." *Id.,* 428, 91 S.Ct. at 1538.

604 F.2d at 234. To validly claim a constitutional privilege, "the taxpayer must have a real basis for fearing that he would be subject to criminal prosecution if he were to answer the question in response to which he asserted the privilege." *Id.* A taxpayer may not use "the Fifth Amendment extravagantly to draw a 'conjurer's circle' around the obligation to file." *Id.*

(*quoting United States v. Sullivan,* 274 U.S. 259, 264, 47 S.Ct. 607, 608, 71 L.Ed. 1037 (1927)). *Accord United States v. Verkulien,* 690 F.2d 648, 654 (7th Cir.1982) (to effectively raise the fifth amendment privilege, a taxpayer must allege that the claim was "based upon a colorable claim that he was involved in activities for which he could be criminally prosecuted and that such activities would be revealed if he supplied data on his 1040 form"); *United States v. Neff,* 615 F.2d 1235 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980) (to claim the privilege, a taxpayer must be faced with "substantial hazards of self-incrimination" that are "real and appreciable and not merely imaginary and unsubstantial").

Based on the reasoning of the above-cited cases, the Court holds that plaintiff's refusal to provide any information is bottomed on a patently frivolous position. Plaintiff states only in a generalized manner that he *might* be prosecuted for fraud. The purported return contains only a blanket assertion of a fifth (and fourth) amendment privilege and, in effect, does not constitute a return at all. Moreover, the record is devoid of any evidence to suggest that plaintiff's response to routine tax questions would be the least bit incriminating. Although plaintiff recites numerous hypothetical situations where information could be used as a basis for criminal prosecution, he has not alleged that his particular objections are justified. Bald assertions of constitutional privilege are at the core of the conduct which section 6702 proscribes.[7]

Defendant's motion to dismiss, treated as a motion for summary judgment, will be granted.

---

7. As previously noted the Senate report indicates that the penalty should be applied, for example, when an individual files a purported return "in which many or all of the line items are not filled in except for references to spurious constitutional objections." S.Rep. at 278, U.S.Code Cong. & Admin.News 1982, p. 1024.