**Garrison R. ARMSTRONG,
Plaintiff-Appellant,**

v.

**UNTIED STATES of America,
Defendant-Appellee.**

No. 83–6356.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 5, 1984.

Decided May 7, 1985.

Lawrence S. Branton, San Diego, Cal., for plaintiff-appellant.

Carleton Powell, Washington, D.C., for defendant-appellee.

Before ELY,* FLETCHER, and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Garrison R. Armstrong appeals from the district court's order dismissing his tax refund action. Armstrong contends that Congress violated the origination clause of the Constitution, U.S. Const. art. I, § 7, cl. 1, when it passed the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324 (1982), and therefore, TEFRA is invalid. The district court rejected his claim, and we affirm.

## I.

## BACKGROUND

In 1982 Armstrong paid a $5.18 excise tax on a commercial airline ticket. Because TEFRA increased the excise tax on domestic flights from five to eight percent, Armstrong maintains that TEFRA raised the amount of tax he paid on his ticket by three percent, or $1.94. He filed a refund claim for that amount, contending that TEFRA was invalid because Congress enacted it in violation of the origination clause, which requires that all bills for raising

* Before his untimely death on October 9, 1984, Judge Ely fully participated in the argument, the post-argument conference of the panel, and the decision of this case. He was unable to participate in the preparation of the opinion.

revenue originate in the House of Representatives. The IRS disallowed his claim; and Armstrong filed a refund action in district court. The district court dismissed Armstrong's suit, and he timely appealed.

## II.

### JUSTICIABILITY

The government contends that Armstrong's challenge to TEFRA's constitutionality raises a non-justiciable political question, since it is premised upon the method by which Congress enacted TEFRA. According to the government, Congress specifically determined that TEFRA originated in the House, and concluded that its enactment was therefore constitutional. The government maintains that we should defer to these findings by Congress, *see Rostker v. Goldberg*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), out of " 'respect due to coequal and independent departments,' and the need for finality and certainty about the status of a statute." *Baker v. Carr*, 369 U.S. 186, 214, 82 S.Ct. 691, 708, 7 L.Ed.2d 663 (1962) (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672, 12 S.Ct. 495, 497, 36 L.Ed. 294 (1891)).

We disagree. Although Congress has an obligation to enact legislation that it deems to be constitutional, its determination that a particular statute is constitutional does not foreclose or relieve this court from conducting its own analysis of that issue. *See INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 2779, 77 L.Ed.2d 317 (1983). Although courts are especially reluctant to interfere with the internal workings of the legislature, they may not shirk from their duty "to give full effect to the provisions of the Constitution relating to the enactment of laws," *Marshall Field*, 143 U.S. at 670, 12 S.Ct. at 496, and they cannot stand powerless in the face of a manifestly unauthorized exercise of power. *Baker*, 369 U.S. at 217, 82 S.Ct. at 710.

The Supreme Court has indicated that an issue is a nonjusticiable political question

when one of the following circumstances is present:

"a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*Chadha*, 103 S.Ct. at 2779 (quoting *Baker*, 369 U.S. at 217, 82 S.Ct. at 710).

None of these conditions is present in this case. There is no dispute concerning the sequence of events and procedures by which Congress enacted TEFRA. We are required to determine only whether those procedures comported with the origination clause of the Constitution. This determination does not require delving into the internal records or workings of Congress, and is particularly well-suited to judicial resolution. The Supreme Court has already implicitly determined that an origination clause challenge to the enactment of a revenue law, such as Armstrong's, is justiciable. *See Flint v. Stone Tracy Co.*, 220 U.S. 107, 143, 31 S.Ct. 342, 346, 55 L.Ed. 389 (1911). Therefore, we proceed to the merits of Armstrong's claim.

## III.

### ORIGINATION CLAUSE CHALLENGE

The origination clause of the Constitution requires that: "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Const. art. I, § 7, cl. 1. The bill that eventually became TEFRA was introduced in the House of Representatives, and in its original version, it would

have reduced total tax revenues by a billion dollars between 1982 and 1986. *See* H.R. Rep. No. 404, 97th Cong., 1st Sess. 38–41 (1981). However, the Senate replaced the entire text of the House bill except for its enacting clause, H.Conf.Rep. No. 760, 97th Cong., 2d Sess. 409 (1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News 781, 1190, and the Senate version, which Congress ultimately passed, increased total revenues by about one hundred billion dollars between 1983 and 1985. H.Conf.Rep. No. 760 at 414–15, 434; S.Rep. No. 494, 97th Cong., 2d Sess. 79 (1982), *reprinted in* 1982 U.S. Code Cong. & Ad.News 849; 96 Stat. 324 (1982); *see Moore v. United States House of Representatives*, 733 F.2d 946, 948–49 (D.C.Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 779, 83 L.Ed.2d 775 (1985).

Armstrong contends that the phrase "Bills for raising Revenue" in the origination clause encompasses only those enactments that *increase* taxes. As a result, he maintains that TEFRA was not a "bill for raising revenue" when it was proposed in the House, but instead was transformed into such a bill by the Senate. Armstrong contends that because TEFRA "originated" as a bill to *raise* revenue in the Senate, its passage violated the origination clause.

■ We cannot accept this restrictive and strained reading of the origination clause. The term "Bills for raising Revenue" does not refer only to laws *increasing* taxes, but instead refers in general to all laws *relating to* taxes. *Wardell v. United States*, 757 F.2d 203, 205 (8th Cir.1985) (per curiam); *Black's Law Dictionary* 1133 (Rev. 5th ed. 1979) (defining "raise" in the revenue context to mean "to collect, to levy, as to raise money by levying taxes"); *see also* 2 A. Hinds, *Precedents of the House of Representatives of the United States* § 1489 at 949–53 (1907) (recounting an 1872 debate between the House and Senate concerning the proper interpretation of the origination clause).

Under Armstrong's interpretation, bills or amendments *raising* taxes would have to originate in the House, whereas bills or amendments *lowering* taxes could presum-

ably be initiated in either the Senate or House. This interpretation raises several problems. First, it runs sharply contrary to past practice, since the Senate has never regarded itself as being empowered to initiate any sort of revenue bill, even one that lowers taxes. *See, e.g.,* 2 A. Hinds *Precedents of the House* § 1489 at 949–53. Second, it may well be impossible to implement, since members of Congress may differ over whether a proposed revenue bill or amendment will "increase" or "decrease" taxes overall, and since the same revenue bill may well have varying effects upon the total taxes assessed in different years. Finally, Armstrong's interpretation would negate or sharply restrict the application of the final phrase of the origination clause, which authorizes the Senate to "propose or concur with amendments *as on other Bills,*" since it would prohibit the Senate from proposing amendments to revenue bills if their effect would be to transform revenue proposals lowering taxes into measures raising taxes. The Senate is not constrained from proposing amendments on any other types of legislation based upon the effect those amendments would have; it would be inconsistent and therefore contrary to the wording of the origination clause to limit the Senate's flexibility to a greater extent in the revenue context.

■ We therefore reject Armstrong's proposed interpretation of the origination clause, and conclude instead that in adopting that clause, the framers of the Constitution intended that *all* legislation relating to taxes (and not just bills *raising* taxes) must be initiated in the House. *See* The Federalist No. 66, at 404 (A. Hamilton) (New American Library ed. 1961) ("The *exclusive privilege of originating money bills* will belong to the House of Representatives.") (emphasis added); *see also id.,* Nos. 35–36, at 216–220 (suggesting that those best "acquainted with the general genius, habits, and modes of thinking of the people at large and with the resources of the country" will be most likely to conduct "a judicious exercise of the power of taxation"). However, we also conclude

that once a revenue bill has been initiated in the House, the Senate is fully empowered to propose amendments, even if their effect will be to transform a proposal lowering taxes into one raising taxes. We therefore conclude that the Senate did not exceed its authority under the origination clause when it proposed the extensive amendments that ultimately became TEFRA.

Our decision is strongly influenced, if not controlled, by the Supreme Court's decision in *Flint v. Stone Tracy Co.*, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911). *Flint* involved a challenge to a revenue provision that was introduced in the House as a measure creating an inheritance tax, but which the Senate amended to establish a corporate tax instead. The Court held that the enactment of the bill did not violate the origination clause, because the bill had originated in the House, and the Senate amendment was "germane to the subject-matter of the bill [revenue collection], and not beyond the power of the Senate to propose." *Id.* at 143, 31 S.Ct. at 346. The Court was not swayed by the fact that the amended tax plan increased taxes for corporations or that it might raise total taxes to a greater extent than the proposed House bill.

We join the Third, Sixth, and Eighth Circuits in concluding that in light of *Flint*, Congress' enactment of TEFRA did not violate the origination clause. *Wardell v. United States*, 757 F.2d at 205; *Heitman v. United States*, 753 F.2d 33, 35 (6th Cir.1984) (per curiam); *Rowe v. United States*, 583 F.Supp. 1516, 1519 (D.Del.), *aff'd mem.*, 749 F.2d 27 (3d Cir.1984). The bill that ultimately became TEFRA "originated" in the House as revenue legislation, and the Senate's amendments, while far-reaching and extensive, were "germane to the subject-matter of the bill [reform of the income tax system], and not beyond the power of the Senate to propose." *Flint*, 220 U.S. at 143, 31 S.Ct. at 346; *accord, Wardell*, 757 F.2d at 205; *Heitman*, 753 F.2d at 35. Therefore, we reject Armstrong's challenge to the enactment of TEFRA.

## IV.

## CONCLUSION

We affirm the district court's judgment. We conclude that Armstrong's claims relating to the enactment of TEFRA present a justiciable controversy, and further conclude that Congress did not violate the origination clause when it enacted TEFRA.

AFFIRMED.